## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No.** ____ *3:09-CR-397* |
| | : | |
| | : | **18 U.S.C. § 2** |
| | : | **18 U.S.C. § 371** |
| **v.** | : | **18 U.S.C. § 1519** |
| | : | **18 U.S.C. § 1512** |
| | : | **18 U.S.C. § 1001** |
| **MATTHEW NESTOR,** | : | |
| **JASON HAYES, AND** | : | |
| **WILLIAM MOYER** | : | |

*FILED*
*SCRANTON*

*DEC 1 0 2009*

*PER ____*
*DEPUTY CLERK*

### INDICTMENT

**THE GRAND JURY CHARGES:**

### GENERAL ALLEGATIONS

1.  On or about July 12, 2008, at approximately 11:30 pm, a group of six males known to the Grand Jury, including Derrick Donchak, Brandon Piekarsky, Participant # 1, and Participant # 2, confronted L.R., a Latino male, in a public park, and assaulted L.R. on a public street by striking and kicking him while members of the group yelled racial slurs at L.R., such as "Spic" and "Fucking Spic", and screamed: "Go Back to Mexico" and "Tell your Mexican friends to get the fuck out of Shenandoah."

2.  After the assault, L.R. lost consciousness and remained comatose until he died on July 14, 2008.

3.  The medical examiner ruled L.R.'s death a homicide caused by blunt-force trauma to the head.

4.  While they were attempting to flee, the conspirators, including Derrick Donchak, Brandon Piekarsky, Participant # 1, and others known to the Grand Jury, were stopped by

- 2 -

defendants JASON HAYES and WILLIAM MOYER.

5. At all times relevant to this Indictment, the Shenandoah Police Department was a law enforcement agency in Schuylkill County, Pennsylvania.  Among other functions, the Shenandoah Police Department investigated crimes committed in Shenandoah, Pennsylvania.

6. At all times relevant to this Indictment, employees of the Shenandoah Police Department were responsible for conducting themselves in compliance with federal, state and local laws, including the United States Constitution.

7. At all times relevant to this Indictment, defendant MATTHEW NESTOR was employed by the Shenandoah Police Department as the Chief of Police.

8. At all times relevant to this Indictment, defendant MATTHEW NESTOR was a friend of, and has vacationed with, the mother of Brandon Piekarsky.

9. At all times relevant to this Indictment, defendant JASON HAYES was employed by the Shenandoah Police Department, working as a patrolman.

10. At all times relevant to this Indictment, defendant JASON HAYES was dating the mother of Brandon Piekarsky, and knew all of the individuals involved in the beating of L.R.

11. At all times relevant to this Indictment, defendant WILLIAM MOYER was employed by the Shenandoah Police Department, working as a lieutenant.  Defendant WILLIAM MOYER's son was a high school freshman who played on the same football team with the individuals who had fatally beaten L.R.

- 3 -

## COUNT 1

[18 U.S.C. § 371]

<u>The Conspiracy</u>

1. Paragraphs 1-11 of the General Allegations are incorporated by reference in this count.

2. On or about July 12, 2008, and continuing until March 30, 2009, in Shenandoah, Pennsylvania, and elsewhere within the Middle District of Pennsylvania, the defendants

MATTHEW NESTOR,
JASON HAYES, and
WILLIAM MOYER,

and others known and unknown to the Grand Jury, did knowingly conspire, combine, confederate and agree with other persons known and unknown to the Grand Jury, in relation to and in contemplation of a matter within the jurisdiction of an agency of the United States, to falsify documents, specifically official police reports, with the intent to impede, obstruct, and influence the investigation and proper administration of that matter in violation of 18 U.S.C. § 1519.

<u>Manner, Means, and Object of the Conspiracy</u>

3. It was part of the manner, means, and object of the conspiracy that Derrick Donchak, along with persons known and unknown to the Grand Jury, including Brandon Piekarsky, Participant # 1, Participant # 2, Person # 1, Person # 2, and others, agreed to provide false statements to officials regarding the assault on L.R.

4. It was further part of the manner and means of the conspiracy that members of the Shenandoah Police Department, including defendants MATTHEW NESTOR, JASON HAYES,

- 4 -

and WILLIAM MOYER, intentionally failed to memorialize or record inculpatory statements
made by Brandon Piekarsky about the attack on L.R.

    5. It was further part of the manner and means of the conspiracy that members of the
Shenandoah Police Department, including MATTHEW NESTOR, JASON HAYES, and
WILLIAM MOYER, wrote false and misleading official reports that memorialized false
statements by the persons involved in the racially motivated assault on L.R., and that
intentionally omitted information about the true nature of the assault and the investigation.

<u>Overt Acts</u>

    In furtherance of this conspiracy, and to accomplish its objectives, the conspirators
committed the following overt acts, among others, in and around Shenandoah, Pennsylvania:

    6. After responding to the 911 call reporting the assault on L.R., defendants
JASON HAYES and WILLIAM MOYER detained one of the 911 callers, Person # 3, who
identified L.R.'s assailants to the defendants.

    7. After Person # 3 identified the individuals who attacked L.R., including Brandon
Piekarsky, Derrick Donchak, Participant # 1, and others, defendants JASON HAYES and
WILLIAM MOYER stopped, and then released, the individuals identified by Person # 3.

    8. Shortly after the attack, several assailants, including Derrick Donchak, Participant # 1,
Participant # 2, and others known to the Grand Jury, met at Derrick Donchak's home where they
discussed with each other and others present at the home, what had taken place during the assault
on L.R.

- 5 -

9. Following the assault of L.R., Brandon Piekarsky went with defendants JASON HAYES and WILLIAM MOYER to the scene, at which time, Brandon Piekarsky told them about the assault on L.R.

10. While at the crime scene, Brandon Piekarsky called Derrick Donchak from his cell phone, which had been provided by and paid for by defendant JASON HAYES. Brandon Piekarsky told Derrick Donchak and Participant # 1 that he, Brandon Piekarsky, had already told the police about the assault on L.R.

11. After telling defendant JASON HAYES and other law enforcement officers about the assault on L.R., Brandon Piekarsky went to Derrick Donchak's house and agreed with Derrick Donchak, Participant # 1, Participant # 2, and others known to the Grand Jury to give a false account of the assault on L.R. to authorities in official statements.

12. Shortly after Brandon Piekarsky arrived at Derrick Donchak's home, Brandon Piekarsky's mother, T.P., arrived and told the assailants and others known to the Grand Jury that she had been in touch with her boyfriend, defendant JASON HAYES, and that the conspirators needed to "get their stories straight" because defendant JASON HAYES had advised her that L.R.'s medical situation was deteriorating, which could result in a homicide investigation.

13. Shortly after the assault on L.R., defendant MATTHEW NESTOR was advised by an official with the Borough of Shenandoah known to the Grand Jury that the Police Department should recuse itself from the investigation of the assault because of the identities of the suspects involved in the attack on L.R., and defendant MATTHEW NESTOR responded that the Police Department would continue to handle the investigation.

- 6 -

14. Prior to leaving Derrick Donchak's home, the group, including Derrick Donchak, Brandon Piekarsky, Participant # 1, Participant # 2, and others known to the Grand Jury, created a false version of events to be incorporated in official police reports which omitted references to Brandon Piekarsky kicking L.R. and to the racial motivation for the assault.

15. The next morning, the conspirators, including Derrick Donchak, Brandon Piekarsky, Participant # 1, Participant # 2, and others known to the Grand Jury met at Brandon Piekarsky's house and again agreed to provide false statements to the authorities at the Shenandoah Police Station.

16. At Brandon Piekarsky's house, Derrick Donchak discussed with the others present the need to dispose of the sneakers worn by the co-conspirators during the attack on L.R.

17. Afterwards, defendant WILLIAM MOYER went to Participant # 1's house and told him to talk to his friends about the version of events that would be communicated to the authorities.

18. On July 13, 2008, Participant # 2 knowingly gave false and misleading statements to the Police Department and other authorities about the assault on L.R.

19. On July 13, 2008, Person # 2 knowingly gave false and misleading statements to the Police Department and other authorities about the assault on L.R.

20. On July 13, 2008, Derrick Donchak knowingly gave false and misleading statements to the Police Department and other authorities about the assault on L.R.

21. On July 14, 2008, Person # 1 knowingly gave false and misleading statements to the Police Department and other authorities about the assault on L.R.

22. On July 16, 2008, Participant # 1 knowingly gave false and misleading statements to

- 7 -

the Police Department and other authorities about the assault on L.R.

23. In the weeks following the assault on L.R. and his subsequent death, defendant WILLIAM MOYER of the Shenandoah Police Department contacted the parents of Participant # 2 and advised them to dispose of the sneakers he wore during the assault on L.R.

24. Brandon Piekarsky and Derrick Donchak disposed of the sneakers they wore on the night L.R. was attacked.

25. Having interviewed an eyewitness to the assault on L.R. in the early morning hours of July 13, 2008, defendants JASON HAYES and WILLIAM MOYER knowingly and deliberately mischaracterized the witness's account in their official reports on or about August 1, 2008, in order to falsely exaggerate the culpability and role of Participant # 2 and exculpate Brandon Piekarsky in the assault on L.R.

26. In a report dated July 29, 2008, defendant JASON HAYES knowingly created a false and misleading official report regarding the investigation into the assault on L.R.

27. On or about August 1, 2008, defendant MATTHEW NESTOR reviewed and approved defendant JASON HAYES' report, which defendant MATTHEW NESTOR knew to be false.

28. On or about July 20, 2008, defendant MATTHEW NESTOR knowingly created a false and misleading official report regarding the investigation into the assault on L.R.

29. In a report dated August 1, 2008, defendant MATTHEW NESTOR knowingly created a false and misleading official report regarding the investigation into the assault on L.R.

- 8 -

30. In a report prepared shortly after the assault on L.R., which is captioned "Lt. William Moyer's Incident Report regarding Case # 125-424 . . .," defendant WILLIAM MOYER knowingly memorialized false and misleading information in an official report regarding the investigation into the assault on L.R.

31. In a report prepared on or about August 1, 2008, which is captioned "Investigation of Kids Running from Homicide Scene," defendant WILLIAM MOYER knowingly memorialized false and misleading information in an official report regarding the investigation into the assault on L.R.

32. Shortly before July 24, 2008, defendant WILLIAM MOYER, knowing that Brandon Piekarsky was culpable in the assault on L.R., traveled to the home of Participant # 2 and, in an effort to exculpate Brandon Piekarsky, advised the parents of Participant # 2 that although the Shenandoah Police Department did not intend to file serious charges, the Schuylkill County District Attorney had taken over the case, and Participant # 2 should take full responsibility for the assault on L.R.

33. Knowing that Brandon Piekarsky was culpable in the assault on L.R., T.P. telephoned Participant # 1's father on March 30, 2009, in reference to Participant # 1's possible cooperation with federal authorities and advised Participant # 1's father that the only way Brandon Piekarsky would get indicted was if Participant # 1 testified against Brandon Piekarsky. All in violation of Title 18, United States Code, Section 371.

- 9 -

**THE GRAND JURY FURTHER CHARGES THAT:**

## COUNT 2

18 U.S.C. §§ 1519 and 2
[Falsification of Records in Federal Investigations and Aiding and Abetting]

1. Paragraphs 1-11 of the General Allegations are incorporated by reference in this count.

2. On or about July 12, 2008, and continuing until on or about March 30, 2009, in Shenandoah, Pennsylvania, and elsewhere within the Middle District of Pennsylvania, the Defendants:

MATTHEW NESTOR,
JASON HAYES, and
WILLIAM MOYER,

along with other persons known and unknown to the Grand Jury, while aiding and abetting one another, and while acting in relation to and in contemplation of a matter within the jurisdiction of an agency of the United States, knowingly falsified documents, specifically official police reports, with the intent to impede, obstruct, and influence the investigation and proper administration of that matter.

All in violation of Title 18, United States Code, Sections 1519 and 2.

**THE GRAND JURY FURTHER CHARGES THAT:**

## COUNT 3

18 U.S.C. § 1512(c)
[ Attempt to Conceal Physical Object]

1. Paragraphs 1-11 of the General Allegations are incorporated by reference in this count.

- 10 -

2.  On or about July 12, 2008, and continuing until July 24, 2008, in Shenandoah,

Pennsylvania, and elsewhere within the Middle District of Pennsylvania, defendant

WILLIAM MOYER,

along with other persons known and unknown to the Grand Jury, while aiding and abetting one

another, did attempt to corruptly destroy, mutilate, and conceal an object, namely a pair of shoes

worn during the assault on L.R., with the intent to impair its integrity or availability for use in an

official proceeding.

All in violation of Title 18, United States Code, Section 1512(c) and 2.


**THE GRAND JURY FURTHER CHARGES THAT:**

## <u>COUNT 4</u>

18 U.S.C. § 1512(b)(3)
[Obstruction of Justice - Corrupt Persuasion]

1.  Paragraphs 1-11 of the General Allegations are incorporated by reference in this count.

2.  On or about July 13, 2008, in the Middle District of Pennsylvania, the defendant,

WILLIAM MOYER,

did knowingly attempt to corruptly persuade and corruptly persuaded Participant # 1 by telling

him to coordinate his story with his fellow assailants in the attack on L.R. with the intent to

hinder, delay, and prevent the communication to a law enforcement officer of information relating

to the commission and possible commission of a Federal offense.

- 11 -

All in violation of Title 18, United States Code, Section 1512(b)(3).

**THE GRAND JURY FURTHER CHARGES THAT:**

## COUNT 5

18 U.S.C. § 1001
[False Statements]

1. Paragraphs 1-11 of the General Allegations are incorporated by reference in this count.

2. On or about June 2, 2009 and June 11, 2009, within the Middle District of

Pennsylvania, and elsewhere, defendant

WILLIAM MOYER,

in a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI"), an agency of the

United States, knowingly and willfully made and caused to be made a false material statement and

representation, in that defendant falsely stated that a 911 caller, Person # 3, at the little league

field in Shenandoah on July 12, 2008, reported to WILLIAM MOYER AND JASON HAYES that

there was a man with a gun, and that Person # 3 never identified anyone involved in the assault on

L.R., when, in truth and fact as the defendant then knew, the 911 caller, Person # 3, had identified

- 12 -

the individuals involved in the assault on L.R. to WILLIAM MOYER and JASON HAYES.

All in violation of Title 18, United States Code, Section 1001.

A TRUE BILL.



THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

Eric L. Gibson
Trial Attorney
Civil Rights Division
Criminal Section

Date: _12/10/09_