**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| | CASE NO. 3:09-CR-00397 |
| v. | |
| | (JUDGE CAPUTO) |
| MATTHEW NESTOR, | |
| Defendant. | |

## MEMORANDUM

Presently before the Court are various motions by Defendant Matthew Nestor. These motions include a Motion to Dismiss Count 1 and Count 2 of the Indictment (Doc. 75), a Motion for a Bill of Particulars (Doc. 79), and a Motion for Disclosure (Doc. 108). For the reasons discussed below, the motions will be granted in part and denied in part.

## BACKGROUND

On December 10, 2009, the Grand Jury charged Defendant Nestor with one count of conspiracy under 18 U.S.C. §371 and one count of falsification of records under 18 U.S.C. §1519. The Indictment ("Indict.") alleges the following:

On July 12, 2008 a group of six males, including, Derrick Donchack ("Donchack"), Brandon Piekarsky ("Piekarsky"), Participant # 1, and Participant # 2, assaulted L.R., a Latino Male, while members of the group yelled racial slurs. Specifically, the group yelled: "Spic," "Fucking Spic," "Go back to Mexico," and "Tell your Mexican friends to get the fuck out of Shenandoah." On July 14, 2008, as a result of the assault, L.R. died from blunt-force trauma to the head. (Indict. at 1, Doc. No. 1.)

At the time of the assault, Defendant Jason Hayes was a patrolman for the

Shenandoah Police Department, was dating the mother of Piekarsky, and knew the individuals involved in the assault. Defendant William Moyer, a lieutenant in the Shenandoah Police Department, has a son who, at the time of the assault, was a high school freshman on the same football team as the individuals who assaulted L.R. Defendant Nestor, Shenandoah Chief of Police at the time of the assault, was a friend of Piekarsky's mother and had vacationed with her. (Indict. at 2.)

Defendants Nestor, Moyer, and Hayes conspired in relation to and contemplation of a matter within United States jurisdiction to falsify police reports with the intention of impeding or influencing the investigation and administration of that United States matter. (Indict. at 3.) As part of the means, manner, and object of the conspiracy, Donchak, Piekarsky, Participant # 1, Participant # 2, and two others, Person # 1 and Person # 2, provided false statements to officials regarding the assault. Furthermore, Defendants Moyer, Hayes, and Nestor intentionally failed to record inculpatory statements by Piekarsky and intentionally wrote false and misleading reports and false statements by those involved in the racially motivated assault. (Indict. at 3 - 4.)

In furtherance of the conspiracy, Defendants Moyer and Hayes detained Piekarsky, Donchak, Participant # 1, and others as they were fleeing the scene of the crime, and then released them despite the fact that Person # 3, a 911 caller, identified them as L.R.'s attackers. (Indict. at 4.) Following the assault, Piekarsky took Defendants Hayes and Moyer to the crime scene and told them about the assault. Afterwards, Piekarsky's mother, T.P., spoke to Defendant Hayes, and, while at Donchack's home told Piekarsky, Donchak, Participant # 1, Participant # 2, and others that Hayes said to "get their stories straight" because there could be a murder investigation. (Indict. at 5.) Prior to leaving Donchak's

2

home, Donchak, Piekarsky, Participant # 1, Participant # 2, and others, created a false story which omitted the racial motivation for the assault. (Indict. at 6.) On July 13, 2008, Defendant Moyer went to Participant # 1's home to tell him to decide on a version of events to tell authorities. Between July 13 and July 16, 2008, Donchak, Participant # 1, Participant # 2, Person # 1, and Person # 2 gave false statements to police about the assault. *Id.*

Weeks following the assault, Defendant Moyer contacted the parents of Participant # 2, telling them to dispose of the sneakers worn on the night of the assault, and following this, Piekarsky and Donchak disposed of the sneakers they wore that night. (Indict. at 7.) On July 29, 2008, Defendant Hayes knowingly created a false report about the investigation of the assault. On or about August 1, 2008, Defendants Moyer and Hayes deliberately mischaracterized witness accounts in official reports to exculpate Piekarsky and falsely implicate Participant # 2, and Defendant Nestor reviewed and approved Hayes' report, which Nestor knew to be false. On or about July 20 and August 1, 2008, Defendant Nestor knowingly created a false report about the assault. (Indict. at 7.) Defendant Moyer created two false reports, one soon after the assault, titled "Lt. William Moyer's Incident Report regarding Case # 125-424," and one on or about August 1, 2008, titled "Investigation of Kids Running from Homicide Scene." (Indict. at 8.)

Shortly before July 24, 2008, Defendant Moyer, knowing that Piekarsky was guilty in the assault, advised the parents of Participant # 2 that the Shenandoah Police Department did not intend to file serious charges, but the District Attorney had taken over the case and Participant # 2 should take full responsibility for the assault. On March 30, 2009, T.P. called the father of Participant # 1, referencing Participant # 1's cooperation with federal authorities. She told the father that Piekarsky would not get indicted if Participant # 1 did not testify

3

against him.  (Indict. at 8.)  Defendant Moyer corruptly persuaded Participant # 1 to coordinate a story with the other assailants with the intention of hindering the investigation of a federal offense.  (Indict. at 11.)  Defendant Moyer, in relation to a matter under FBI jurisdiction, lied about Person # 3, a 911 caller, stating that Person # 3 said they saw a man with a gun when Person # 3 actually stated he saw the group of six boys assault L.R.  (Indict. at 12.)

## LEGAL STANDARD

### I.    MOTION TO DISMISS

Rule 7(c)(1) requires an indictment to contain "a plain, concise, and written statement of the essential facts constituting the offense charged" and a statement of which statutes the defendant is alleged to have violated.  Fed. R. Crim. P. 7(c)(1).  Under Federal Rule of Criminal Procedure 12(b)(3)(B), motions claiming a defect in the indictment must be raised prior to trial.  In ruling on a Rule 12(b)(3)(B) motion to dismiss, the court's role is not to determine the sufficiency of the evidence, but to determine whether the allegations in the indictment are sufficient to charge the named offense.  *See United States v. DeLaurentis,* 230 F.3d 659, 661 (3d Cir. 2000) (citing *United States v. Sampson,* 371 U.S. 75, 78-79 (1962)).  The trial court should consider only those objections "that are capable of determination without the trial of the general issue."  *United States v. Carlos Alberto Diaz-Gomez*, No. CRIM. 88-484-1, 2000 WL 1868394, at *3 (E.D. Pa. 2000) (quoting *United States v. Donsky*, 825 F.2d 746, 751 (3d Cir. 1987)).  Because a motion to dismiss should not be decided based on weigh of the evidenc, the allegations in the indictment are assumed

4

to be true. *See Diaz-Gomez*, 2000 WL 1868394, at * 3.

To determine the sufficiency of an indictment, courts utilize a two part test: (1) "whether the indictment contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet, and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Oliver*, No. 01-3223, 2002 WL 31474532, at *1 (3d Cir. 2002) (quoting *United States v. Hodge*, 211 F.3d 74, 76 (3d Cir. 2000)). "No greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *United States v. Bryant*, 556 F.Supp.2d 378, 383 - 84 (D. N.J. 2008) (quoting *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007)). In reviewing an indictment, a court should use "common sense" to determine "whether [a defendant's] conduct, as charged 'reflect[s] a proper interpretation of criminal activity under the relevant criminal statute.'" *Id.* at 384 (quoting *Hodge*, 211 F.3d at 76; *United States v. Delle Donna*, 552 F.Supp.2d 475, 483 (D. N.J. 2008)).

## II.    MOTION FOR BILL OF PARTICULARS

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the trial court may direct the filing of a bill of particulars. The decision to grant a bill of particulars lies within the discretion of the trial court. *See United States v. Armocida,* 515 F.2d 49, 54 (3d Cir. 1975), *cert. denied* 423 U.S. 858, 96 S.Ct. 111 (1975). The Third Circuit Court of Appeals has explained that "[t]he purpose of a bill of particulars is 'to inform the defendant of the nature of the charges brought against him, to adequately prepare his defense, to avoid surprise

5

during the trial and to protect him against a second prosecution for an inadequately described offense.'" *United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005) (quoting *United States v. Addonizio*, 451 F.2d 49, 63-64 (3d Cir. 1972)).

Although the Federal Rules of Criminal Procedure have been amended in order to "encourage a more liberal attitude by the courts toward bills of particulars," *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989) (quoting Fed. R. Crim. P. advisory cmte. notes to 1966 amendments), as a practical matter, when deciding whether to direct the government to file a bill of particulars the Court must assess whether the indictment fails "to provide factual or legal information," and whether that failure "significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *Rosa*, 891 F.2d at 1066.

A bill of particulars is also designed to limit and define the government's case. *See United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985*). "*As with an indictment, there can be no variance between the notice given in a bill of particulars and the evidence at trial." *Id.* Thus, the court must balance the defendant's need to know evidentiary-type facts in order to adequately prepare a defense with the government's need to avoid prematurely disclosing evidentiary matters to the extent that it will be unduly confined in presenting its evidence at trial. *See United States v. Deerfield Specialty Papers, Inc.,* 501 F. Supp. 796, 809 (E.D. Pa. 1980). The defendant is not entitled to wholesale discovery of the government's evidence, nor to a list of the government's prospective witnesses. *Addonizio,* 451 F.2d at 64. Nor is a bill of particulars a vehicle to compel disclosure of the details of the government's theory of the case. *United States v. Tedesco*, 441 F. Supp. 1336, 1343 (M.D.

Pa. 1977).

The Third Circuit Court of Appeals has emphasized that the need for a bill of particulars is obviated in cases where the Government supplements a detailed charging document with substantial discovery, *Urban*, 404 F.3d at 772, and that bills of particulars are "not intended to provide the defendant with the fruits of the government investigation." *Smith*, 776 F.2d at 1111 (citations omitted). Instead, unlike discovery, a bill of particulars is intended to give the defendant only "that minimum amount of information necessary to permit the defendant to conduct his *own* investigation," and not to provide the defendant with the fruit of the government's investigation. *Id.* (emphasis in original).

## III.     MOTION FOR DISCLOSURE

There is no constitutional right to discovery in a criminal case. *United States v. Mariani*, 7 F.Supp.2d 556, 561 (M.D. Pa. 1998) (Vanaskie, J.) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)). However, some evidence, courts have reasoned, must be disclosed to protect defendants' due process rights. For instance evidence which is both exculpatory and material must be disclosed by the government. *Id.* (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Higgs*, 713 F.2d 39, 42 (3d Cir. 1983)). Exculpatory evidence is evidence which "goes to the heart of the defendant's guilt or innocence as well as that which might alter the jury's judgment of the credibility of a crucial prosecution witness." *Giglio v. United States*, 405 U.S. 150, 154 (1972). Exculpatory evidence should be found to be material if it raises reasonable doubt as to the defendant's guilt. *United States v. Agurs*, 427 U.S. 97, 112 (1976). It is within the discretion of the trial court to order pretrial disclosure of Brady and Giglio material. *Higgs*, 713 F.2d at 44 n.6.

**DISCUSSION**

I.     **MOTION TO DISMISS**

Defendant is charged with one count of obstruction of justice under 18 U.S.C. §1519 and one count of conspiracy to violate §1519 under 18 U.S.C. §371.  Chapter 73 of Title 18 of the United States Code deals with criminal liability for obstruction of justice.  §1519 of that chapter provides:

> [w]hoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. §1519.  Defendant claims that the charges against him should be dismissed for two reasons.  First, Defendant claims that §1519 requires a nexus between the alleged obstructive action and some matter within the jurisdiction of the United States and that the Government has failed to sufficiently allege such a nexus, nullifying the indictment. Secondly, Defendant claims that §1519 is unconstitutionally vague, and therefore, the indictment against him must be dismissed.

A.     **Nexus Requirement**

Defendant claims that §1519 requires a nexus between the alleged act of obstructing justice and a federal investigation.  Defendant relies on two United States Supreme Court decisions which required such a nexus in  §§1503 and 1512(b)(2), both of which are

8

obstruction of justice statutes under Chapter 73. Defendant claims that because of the similarities between these statutes and §1519, the nexus requirement in those provisions should be applied to §1519.

First, in *United States v. Aguilar*, the Court found that 18 U.S.C. §1503 requires a nexus between an obstructive action and the administration of justice which it affects. 515 U.S. 593, 598-600 (1995). Under §1503, anyone who "corruptly or by threats of force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede the due administration of justice" is criminally liable. 18 U.S.C. §1503. This "omnibus clause" is a broad, catch-all provision attached at the end of §1503 and is designed to encompass acts not covered by earlier, more specific provisions in §1503. *Aguilar*, 515 U.S. at 598. It was under this general provision that the Aguilar was charged. *Id.*

In finding a nexus requirement in §1503, the Court looked to prior precedent which held that a person was not "sufficiently charged" with obstruction of justice unless that person "had notice that justice was being administered." *Id.* (quoting *Pettibone v. United States*, 148 U.S. 197, 207 (1893)). Viewing this precedent, the Court adopted a nexus requirement which had been imposed upon §1503 by some circuit courts; this requirement mandated that "the [obstructive] act must have a relationship in time, causation, or logic with the judicial proceedings" that the action is alleged to obstruct. *See Aguilar*, 515 U.S. at 599 (citing *United States v. Wood*, 6 F.3d 692, 696 (10th Cir. 1993); *United States v. Walasek*, 527 F.2d 676, 679 (3d Cir. 1975)). This nexus requirement demands that the obstruction has the "'natural and probable effect' of interfering with the due administration of justice." *Id.* at 599

9

(quoting *Wood*, 6 F.3d at 695).

The Court read this nexus requirement into §1503 because the broad, catch-all provision could encompass innocent acts; absent a nexus between the act and the official proceeding, there is no "evil intent to obstruct" or criminal culpability which is normally associated with criminal prosecutions *Id.* at 599 (citing *Pettibone,* 148 U.S. at 207). Therefore, "if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding [the nexus], he lacks the requisite intent to obstruct." and is not properly charged under §1503. *Id*. at 599.

Secondly, in *Arthur Anderson LLP v. United States*, the Court held that 18 U.S.C. §1512(b)(2) requires a nexus between threats and an official proceeding which those threats obstructed or could obstruct. 544 U.S. 696, 708 (2005). §1512 provides penalty for anyone who:

> knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to cause any person to: (A) withhold testimony, or withhold a record, document, or other object from an official proceeding or (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding.

18 U.S.C.A. §1512(b)(2). In finding a nexus requirement in §1512(b)(2), the Court focused specifically on the language "knowingly" and "corruptly persuades." *See Arthur Anderson*, 544 U.S. at 703-08. Joining together the terms knowledge, meaning "awareness, understanding, or consciousness," and corrupt, meaning "wrongful, immoral, depraved, or evil," the Court found that in order to be criminally culpable under §1512(b)(2), a person must be conscious of their wrongdoing. *Id*. at 706. The Court found that the parties must have

had the specific intent to taint the official proceedings in order to meet this requirement. *See id.* While §1512 does not require a pending or ongoing proceeding in order to bring prosecution, the Court found that such a proceeding must actually have been foreseen or contemplated in order to foster the evil intent mandated by the "knowingly . . . corruptly persuade" language. *Id.* at 707-08. This requirement, the Court noted, is essentially the nexus mandated by *Aguilar*. *Id.* at 708.

The analysis of whether §1519 requires such a nexus begins with one sound principle: federal courts, in deference to Congress and in order to provide fair warning to the citizenry that its actions would be illegal under federal law, should exercise restraint in construing the reach of federal criminal statutes. *Aguilar*, 515 U.S. at 600 (citing *McBoyle v. United States*, 283 U.S. 25, 27 (1931); *Dowling v. United States*, 473 U.S. 207 (1985)); *Arthur Anderson*, 544 U.S. at 703. This ideal led the Court to require a nexus in §1503 and §1512(b)(2) prosecutions. *See id.* Without the requirement of a nexus, the public may not have warning of their actions' illegality because they would not be aware of the federal proceeding they were obstructing. *See id.* Restraint is "particularly appropriate . . . where the act underlying the conviction . . . is by itself innocuous." *Arthur Anderson*, 544 U.S. at 703. For instance, in *Arthur Anderson*, the statute at issue, §1512(b)(2), prohibited someone from persuading a person with intent to cause that person to withhold documents from the government. *Id.* at 704. Restraint was appropriate because this law could apply to a family member advising a loved one to invoke their Fifth Amendment rights or to a lawyer counseling a client to withhold documents covered by attorney client privilege. *Id.* Similarly, restraint is appropriate when interpreting §1519. §1519 forbids someone to "knowingly . .

. conceal . . . any record . . . with intent to . . . obstruct . . . the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C. §1519. This provision, like that at issue in *Arthur Anderson*, would seemingly apply to a lawyer advising a client to withhold privileged documents, a perfectly innocent activity. It would also apply to the family member advising a loved one to invoke their Fifth Amendment right from self incrimination. Because these legitimate actions could be within the reach of §1519, restraint is required in interpreting this provision.

In light of this principle and established precedent, I find that the nexus requirement of *Aguilar* and *Arthur Anderson* should be applied to §1519. §1519 provides criminal liability for anyone who:

> knowingly alters, destroys, mutilates, conceals, or covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States ... or in relation to or contemplation of any such matter or case.

18 U.S.C.A. §1519. First, this statute, when read alongside §§ 1503 and §1512(b)(2), contains similar language to that which led the Court to read a nexus requirement into those statutes. All three of these statutes are found under Section 73 of the criminal code under the heading "Obstruction of Justice" and share a similar spirit. Each statute was enacted with language which broadened previous obstruction laws under Section 73. However with the broadening of the statutes, the Supreme Court, through *Aguilar* and *Arthur Anderson*, reigned in the statute through the nexus requirement. The language of §1519, like the "knowingly . . . corruptly persuades" language in §1512(b)(2), requires that the accused "knowingly" destroy or alter evidence with "intent" to affect a federal investigation or matter

12

within United States jurisdiction. Each statute requires an action of obstruction of justice: obstructing justice by threat of force, altering evidence, or destroying evidence. Each statute also requires some sort of federal proceeding: the due administration of justice, an official proceeding, or any matter within the jurisdiction of any department or agency of the United States. While each statute encompasses different actions and different proceedings, the effect of each statute is the same. The action must be intended to affect the federal proceeding covered in the statute. This is the nexus that is required by *Aguilar* and *Arthur Anderson* and also by §1519.

Secondly, the policy underlying the nexus requirement of §§ 1503 and 1512(b)(2) requires that the nexus requirement be applied to §1519. The nexus is required to maintain the culpable criminal mentality that is normally expected in criminal prosecutions. The nexus mandate is precisely designed to restrain broad, catch-all provisions like that in §1519 from overreaching. It is intended to ensure that ordinary citizens are put on notice as to whether or not the actions they commit are illegal or illegal. In order for citizens to know whether their actions are illegal under §1519, they must be aware of the link, or nexus, between their actions and the matter which is under United States jurisdiction. Absent this awareness, they cannot be said to have the culpable mind set required in criminal proceedings and under *Arthur Anderson*. *See, e.g.*, *Arthur Anderson*, 544 U.S. at 703 - 04; *Aguilar*, 515 U.S. at 599 - 600. Therefore, policy dictates that the nexus requirement imposed on §§1503 and 1512(b)(2) by *Aguilar* and *Arthur Anderson* also be demanded under §1519.

The Government argues that *Aguilar* and *Arthur Anderson* should not apply to §1519 because Congress intended for the statute to cover a broad range of actions not covered by existing obstruction of justice laws. The argument focuses on a Senate Report pertaining

13

to §1519 which states:

> Other provisions, such as [§1503], have been narrowly interpreted by courts, including the Supreme Court in [Aguilar] to apply only to situations where the obstruction [is] closely tied to a pending judicial proceeding ... the current laws regarding destruction of evidence are full of ambiguities and technical limitations that should be corrected. This provision is meant to accomplish those ends. Section 1519 is meant to apply broadly to any acts to destroy or fabricate physical evidence <u>so long as they are done with intent to obstruct, impede or influence the investigation or proper administration of any matter, and such matter is within the jurisdiction of an agency of the United States, or such acts done either in relation to or in contemplation of such a matter or investigation</u> ... It also extends to acts done in contemplation of such federal matters, so that the timing of the act in relation to the beginning of the matter or investigation is also not a bar to prosecution. The intent of the provision is simple; people should not be destroying, altering, or falsifying documents to obstruct any government function.

S. Rep. No. 146, 107th Cong., 2d Sess. 14-15 (2002) (emphasis added). The Government's argument is defeated by this very Senate Report. As the report makes clear, the defendant must have intended to affect the future investigation or contemplate that such a future investigation or proceeding may occur. *Id.* While the Senate did intend §1519 to be expansive and broaden the scope of previous obstruction statutes, the nexus requirement does not frustrate this purpose. Like §1519, §1512(b)(2), interpreted through *Arthur Anderson*, was intended to apply to federal proceedings that had not yet occurred or were not yet pending. 544 U.S. at 707-08. Despite this broad intent, the Court still required the nexus and the foreseeability of the proceeding. *Id*. at 708. Likewise, Congress' own words in §1519 "or in ... contemplation of" indicate that this nexus requirement exists in §1519.

The Government next contends that the *Arthur Anderson* analysis of §1512(b)(2) does not apply to the more broadly worded §1519. The Government claims that *Arthur Anderson*

14

parses language such as "knowing," "corrupt," and "official proceedings," which is less broad than the language used in §1519 and therefore, that this analysis does not apply to the current matter. The language of §1519, while broader than that in §1512(b)(2), does not negate the *Arthur Anderson analysis.* §1519 uses the language "knowingly," which as in *Arthur Anderson* means "awareness, understanding, or consciousness." 544 U.S. at 706. *Arthur Anderson* focused on the word "corrupt," to describe the evil intent contemplated by §1512(b)(2). While the Government is correct that "corruptly" is not found in §1519, this same evil intent is. §1519 applies to the intent to "impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C. §1519. This language imposes upon the §1519 defendant the same sinister mentality which "corruptly" requires of a §1512(b)(2) defendant. This evil, coupled with "knowingly" mens rea, invites the analysis that the Court applied in *Arthur Anderson.* Furthermore, the fact that §1519 contains this all-encompassing, broad language, creates an even greater need for a nexus requirement. Without the requirement, the danger of both the lack of notice and criminalization of innocent actions which was contemplated by *Aguilar* and *Arthur Anderson* is present in §1519. Therefore, §1519 requires a nexus between the alleged obstruction and the matter within United States jurisdiction which the action is contemplated to obstruct.

### B. Sufficiency of the Allegations

Defendant contends that the Government has failed to allege a violation of §1519 for two distinct reasons. First, Defendant claims that the nexus requirement of §1519 is an element of the offense which must be alleged in the indictment and that because the

Government has failed to allege such a nexus, the indictment must be dismissed.  Secondly, Defendant argues that the Government has failed to allege that Defendant acted in contemplation of any matter within the jurisdiction of the United States under §1519 and that, therefore, the indictment must be dismissed.

### 1. Whether the §1519 Nexus Requirement is an Element of the Offense Which Must Be Alleged in the Indictment

The nexus requirement articulated in *Aguilar* and *Arthur Anderson* mandates a "relationship in time, causation, or logic" between the alleged act of obstruction and the federal investigation or matter within United States jurisdiction which the act is contemplated to obstruct.  *Aguilar*, 515 U.S. at 599 (citing *Wood*, 6 F.3d at 696; *Walasek*, 527 F.2d at 679).  Furthermore, the act must have "'natural and probable effect' of interfering with" the investigation or matter within United States jurisdiction.  *Id*. (citing *Wood*, 6.F.3d at 965).

Defendant claims that the Government has not sufficiently alleged the nexus between Defendant's conduct and a federal investigation or proceeding.  Defendant claims that the Government has not alleged that Defendant either intended to affect a matter within United States jurisdiction or contemplated a future matter within United States jurisdiction when committing the obstructive act.  Defendant claims that there are no allegations of knowledge of a racial motivation in the slaying of L.R. which would allow Defendant to foresee a federal prosecution or investigation.  Defendant misreads the indictment and confuses the §1519 nexus requirement as an element of the offense that must be alleged in the indictment.

While *Aguilar* and *Arthur Anderson* require proof of a nexus in §1503 and §1512(b)(2) prosecutions, they do not mandate a nexus allegation in a criminal indictment; it is a factual determination appropriately left to the jury.  *United States v. Triumph Capital Group, Inc.*, 260

16

F.Supp.2d 470, 475 (D. Conn. 2003) ("the nexus requirement must only be proved at trial"); *United States v. Black*, 469 F.Supp.2d 513, 543 (N.D. Ill. 2006) (finding that the nexus requirement of §1512(b)(2) need not be alleged in the indictment but is a factual question for the jury); *United States v. Ring*, 628 F.Supp.2d 195, 223-24 (D. D.C. 2009) (holding that the nexus requirement of §1512(c)(2), like that of §§1503 and 1512(b)(2), is a jury question and need not be alleged in the indictment); *United States v. Potts*, Crim. No. 07-85, 2007 WL 2219392, at 3 - 4 (D. Minn. 2007); *see also United States v. Gabriel*, 920 F.Supp. 498, 501 (S.D. N.Y. 1996) (noting that *Aguilar* does not require that a nexus be pleaded in the indictment).  Because the nexus requirement of §1519 is derived from that instituted in *Aguilar* and *Arthur Anderson*, §1519 likewise does not require the nexus to be alleged at the indictment stage.  *United States v. Russell*, 639 F.Supp.2d 226, 235 (D. Conn. 2007).

## 2.    Whether the Government has Sufficiently Alleged a Violation of §1519

To determine the sufficiency of an indictment, courts utilize a two part test: (1) "whether the indictment contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet, and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *Oliver*, 2002 WL 31474532 , at *1 (quoting *United States v. Hodge*, 211 F.3d 74, 76 (3d Cir. 2000)).  This indictment passes this test.  It sets out the elements of §1519, that Defendant: (1) knowingly (2) falsified documents (3) with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of an agency of the United States which was contemplated by Defendant.  Moreover, the indictment is more than sufficient to place Defendant on notice of the charges which he must

meet. It specifically sets out which police reports were falsified, the date on or about which they were falsified, and who prepared the falsified reports. It is also not open ended: the indictment alleges that the obstruction occurred between July 12, 2008 and May 30, 2009. This definite period helps to satisfy part two of the test because it highlights the specific conduct at issue. Finally, there is also no discretionary power given to those who apply the law.

Furthermore, the indictment sufficiently alleges that the falsification of these reports could have impeded a federal investigation. The indictment alleges that a group, including Piekarsky and Donchak, assaulted L.R. and that there was a racial motivation for the assault. It alleges that Defendants Moyer, Hayes, and Nestor participated in a conspiracy to impede a federal investigation. It alleges that Piekarsky told Defendants Hayes and Moyer about the assault and that Defendant Hayes, in furtherance of the conspiracy, told the assailants to get their stories straight. It alleges that as a result of this, Piekarsky, Donchak, and others omitted details about the racial motivation for the crime and that these details were in turn omitted from the police report. It alleges that Defendant Nestor knew that these reports were false and approved and filed them despite this knowledge. These allegations are more than sufficient to allege a violation of §1519 and to put Defendant on notice that these are the actions for which he is being charged. While not required to allege a nexus in the indictment, the Government has actually alleged one. It has alleged a "relationship in time, causation, or logic" between the falsification of documents and a potential federal proceeding which the falsification had the "natural and probable effect" of obstructing. Here, the relationship is logical. There is a logical relationship between the falsification of police reports to cover up a racial motivation for a murder and a future federal hate crimes prosecution. The

18

falsification of the report has the probable effect of impeding such a prosecution.

This situation is analogous to one presented in *United States v. Hunt*, where Hunt, a police officer, falsified a police report in regards to excessive force used against a suspect. 526 F.3d 739, 741-42 (11th Cir. 2008). Hunt was prosecuted under §1519 evidence was presented which indicated that Hunt knew that claims of excessive force would be investigated by the FBI. *Id*. at 745. This evidence was used to establish that Hunt had intended to obstruct a federal investigation. *Id.* While *Hunt* was a post conviction case, and this case deals with the sufficiency of the indictment, the rational underlying *Hunt* applies. The indictment in this case sufficiently alleges that Defendant knew of and covered up the racial motivation for the assault. This provides a nexus to a federal hate crime investigation. Like in *Hunt*, the Government can prove at trial that this investigation was foreseeable to and contemplated by Defendant at the time of the cover up because he knew that racially motivated crimes could be prosecuted by the federal government. It is unnecessary for the government to allege specific facts to show intent at this point in the proceedings; that is an issue which is appropriately left for trial. *Russell*, 639 F.Supp.2d at 237 (citing *United States v. Alfonso*, 143 F.3d 772, 777 (2d. Cir. 1998)). Therefore, the Government has sufficiently alleged a violation of §1519.

### C.    Whether §1519 is Unconstitutionally Vague

Defendant claims that §1519 is unconstitutionally vague because of its use of the phrase "in contemplation of . . . any investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States." In essence, Defendant's complaint goes to the breadth of the statute. A statute is unconstitutionally vague if it "either forbids or requires the doing of an act in terms so vague that men of

common intelligence must necessarily guess as to its meaning and differ as to its application." *United States v. Fumo*, 628 F.Supp.2d 573, 596 (E.D. Pa. 2007) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). "Laws must 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly' and must 'provide explicit standards for those who apply them.'" *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 - 09 (1972)). §1519 complies with this standard.

Specifically, §1519 is not vague as applied to the facts of this case. §1519 forbids (1) knowing (2) mak[ing] a false entry in any record (3) in contemplation of the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States. This forbidden conduct is precisely that with which Defendant is charged. The Government alleges that Defendant knowingly falsified the racial motivation for an assault in a police report in contemplation of a federal investigation. A person of ordinary intelligence would understand that as a police officer, it would be illegal under §1519 to falsify, in a police report, the racial motivation for an attack in order to impede a future federal hate crimes investigation.

Defendant claims that this connection is too attenuated, that it was simply not foreseeable for the Defendant to anticipate a hate crimes investigation which arose nearly a year and a half after the assault and after a state prosecution for the assault had already commenced and finished. The question of whether this link is too attenuated or whether the police officers actually contemplated a future federal investigation is a question of fact for the jury.

....Furthermore, as several courts have pointed out, §1519 contains a scienter requirement which mitigates any vagueness that remains in the statute. *Fumo*, 628 F.Supp.2d at 598; *Russell*, 639 F.Supp.2d at 240 (noting that §1519's use of the mens rea "knowingly" creates a necessary consciousness of wrongdoing that "eliminates any statutory vagueness concerns). §1519 was sufficient to put these officers on notice that the actions alleged in the indictment were illegal, and therefore, it is not unconstitutionally vague.

## II.     MOTION FOR BILL OF PARTICULARS

### A.     Particulars Number One and Three

Count I of the indictment makes multiple references to persons known only to this Court and to Defendant as Participant # 1, Participant # 2, Person # 1, and Person # 2. Defendant asks that the Government be ordered to identify these individuals. Defendant is correct that these names are necessary to the preparation of an adequate offense. Count I alleges a conspiracy between Defendants Nestor, Hayes, and Moyer to violate §1519. It alleges that the actions of Participants #1 and # 2, Persons # 1 and # 2, Donchak, and Piekarsky were part of the manner, means, and object of the conspiracy. While these individuals are not formally alleged as co-conspirators, it is clear from the allegations that they are at the very heart of the conspiracy. They are essentially co-conspirators in that they are alleged to have spoken with Defendants and in reaction to this conversation omitted information which allowed Defendants to cover up the racial motivation for the assault of L.R.

In determining whether to order disclosure of co-conspirators' identities, there are three interests at play: Defendant's interest in adequately preparing a defense and avoiding unfair surprise at trial, the Government's interest in adequately preparing its case for trial, and the privacy interests of the alleges co-conspirators. Disclosure of the names of co-

conspirators whom the Government intends to call as witnesses at trial strikes the proper balance when weighing these interests. *MacFarlane*, 759 F.Supp. At 1169 - 70 (citing *United States v. Barrentine*, 591 F.2d 1069 (5th Cir. 1979)); *United States v. Degrasse*, 2003 WL 23277264, 1 (D. V.I. 2003); *Morris*, 2008 WL 5188826 at 1 (finding that because the court should only prevent unfair surprise for the defendant at trial, not limit the government's proof, disclosure of only those witnesses which the government intends to call at trail is appropriate).

While the Government is not required to disclose the names of all those it intends to call a witnesses, these "participants" and "persons" appear from the indictment to be more than ordinary witnesses: they are central to the indictment and they are central to the conspiracy with which Defendant is charged. These individuals come close enough to being alleged as co-conspirators that they fall within this rational for providing a bill of particulars. Without knowledge of the identities of these individuals, it is highly unlikely that Defendant will be able to adequately prepare a defense for trial without the danger or prejudicial surprise. These individuals and their actions appear to be the link or nexus between Defendant's conduct and a federal investigation and are thus of the utmost importance to the case. Providing the names of these individuals is not akin to providing unwarranted discovery; it is simply necessary for Defendant to begin the proper investigation needed to put on an adequate defense at trial.

Defendant also moves for the government to disclose the names of all known co-conspirators and whether they are charged as co-conspirators. Count 1 of the indictment alleges that Defendants Nestor, Hayes, and and others known and unknown to the Grand Jury conspired to violate §1519. To the extent that the Government intends to call these

other co-conspirators to testify at trial, the identities of these co-conspirators must be revealed. Therefore, Defendant's Motion for Particulars Number One and Number Three will be granted.

**B.    Particular Number Two**

Count I of the indictment alleges that Defendant acted in contemplation of a matter within the jurisdiction of a United States agency. Defendant requests to be informed of what the "matter" was, which United States "agency" is at issue, and how he contemplated the matter. §1519 does not require a pending investigation or proceeding in any United States agency nor does it require that any such investigation or proceeding ever take place in the future. *See* 18 U.S.C. §1519. §1519 only requires that a defendant contemplates such a proceeding when committing an obstructive act. *See id.* As has been discussed, §1519 is an exceedingly broad, catch-all provision, which was designed to expand the scope of existing obstruction of justice laws. While not unconstitutionally vague or over broad as Defendant claims, §1519 is troublesome in that it seems to apply to a wide array of actions and could even be interpreted to criminalize innocent conduct. In order to adequately prepare his Defense, Defendant should be made aware of what federal investigation or matter under the jurisdiction of a United States agency he is alleged to have contemplated at the time of the alleged obstructive acts. Unless Defendant is made aware of this crucial element of the offense with which he is alleged, there is a grave danger of unfair surprise at trial. Therefore, Defendant's Motion for Particular Number Two will be granted.

**C.    Particulars Number Four, Number Five, and Number Six**

Counts I and II of the indictment allege that Defendant falsified police reports, omitted information from police reports, and knowingly reviewed and approved false and misleading

23

reports. These allegations in the indictment sufficiently allege the offense in a manner that will allow Defendant to adequately prepare for trial and avoid unfair surprise. Defendant asks this Court to order the Government to reveal precisely which reports are at issue and the specific statements in those reports which it alleges to be false. This request is unwarranted. The indictment alleges the specific dates on which each of the false police reports was created. It alleges the approximate date on which Defendant reviewed and approved false reports. It further alleges the subject matter of the reports and the investigation to which the reports pertained. This is more than sufficient to allow Defendant to prepare for trial. The reports are adequately specified such that it is highly unlikely that Defendant will be unfairly surprised with an unfamiliar police report at trial. Therefore, Defendant's Motion for Particulars Number Four, Five, and Six will be denied.

## III.    MOTION FOR DISCLOSURE

Defendant seeks disclosure of any threats or promises directed at Government witnesses by the Government which were inducements for such witnesses to change their testimony. Defendant also seeks plea bargains and agreements of leniency with government witnesses made prior to or after Defendant's indictment which could affect charges against them or family members as well as grants of immunity from prosecution of any co-defendants. Defendant seeks any further evidence affecting the credibility of Government witnesses. While this evidence must be turned over prior to trial, *Giglio v. United States*, 405 U.S. 105 (1979), this motion is premature. Impeachment evidence may be disclosed to the defense as late as the day that the witness will testify in court. *United States v. Higgs*, 713 F.2d 39, 44 (1983). The Government claims that it intends to turn this information over to the defense three days prior to trial. This schedule is sufficient, and

therefore, Defendant's motion for disclosure of impeachment evidence will be denied.

Defendant seeks any further exculpatory information under *Brady v. Maryland*. While exculpatory information is mandated to be turned over to defense under *Brady*, Defendant has failed to point out any specific *Brady* evidence which he is seeking. The Government claims that it has no further relevant *Brady* evidence and that if it acquires it, it will comply with disclosure. Therefore, defendant's motion will be denied.

## CONCLUSION

For the aforementioned reasons, Defendant's motion to dismiss will be denied. Defendant's motion for bill of particulars will be granted in part and denied in part. Defendant's motion for disclosure will be denied.

 July 6, 2010   
Date

/s/ A. Richard Caputo     
A. Richard Caputo
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,

NO. 3:09-CR-00397

v.

MATTHEW NESTOR,

(JUDGE CAPUTO)

Defendant.

**ORDER**

**NOW**, this ____6th____ day of July, 2010, **IT IS HEREBY ORDERED THAT:**

1.    Defendant's Motion to Dismiss (Doc. 75) is **DENIED**.

2.    Defendant's Motion for a Bill of Particulars (Doc. 79) is **GRANTED IN PART**,

and **DENIED IN PART** as follows:

(a)    The Government is directed to provide Defendant with the

identities of Participant # 1, Participant # 2, Person # 1, and

Person #2.  The Government is directed to disclose which matter

within the jurisdiction of an agency of the United States

Defendant is alleged to have contemplated.  The Government is

directed to disclose the identities of any co-conspirators that it

intends to call as witnesses at trial.

    (b)    Defendant's remaining requests for Particulars are **DENIED**.

3.    Defendant's Motion for Disclosure (Doc. 108) is **DENIED**.


/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge