**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA

v.

MATTHEW NESTOR and WILLIAM MOYER,

Defendants.

CIVIL ACTION NO. 3:09-CR-397

(JUDGE CAPUTO)

**MEMORANDUM**

Presently before the Court are defendant Matthew Nestor's and defendant William Moyer's motions for judgment of acquittal or a new trial. (Docs. 301 and 303.) For the reasons set forth below, these motions will be denied.

**BACKGROUND**

On December 10, 2009, a federal grand jury sitting in the Middle District of Pennsylvania returned an indictment charging Matthew Nestor, Jason Hayes, and William Moyer with Falsifying Records in a Federal Investigation under 18 U.S.C. § 1519; Aiding and Abetting; and Conspiracy to violate § 1519 under 18 U.S.C. § 371. The underlying investigation had concerned the racially motivated beating death of Luis Ramirez, a federal crime within the jurisdiction of the Federal Bureau of Investigation ("FBI"), an agency of the United States. The indictment also charged William Moyer individually with Attempting to Conceal a Physical Object under 18 U.S.C. § 1512(c); Obstruction of Justice under 18 U.S.C. § 1512(b)(3); and False Statements under 18 U.S.C. § 1001.

Following a two-week jury trial, on January 27, 2011 Defendant Nestor was found guilty of violating 18 U.S.C. § 1519 and acquitted on the Conspiracy count. Defendant

Moyer was found guilty of violating 18 U.S.C. § 1001 and acquitted on the other counts. Defendant Hayes was acquitted on all counts. Following the jury's verdict, defendants Nestor and Moyer both moved for a judgment of acquittal, as they had done at the close of the government's case and again before jury deliberations commenced. They also both filed motions for a new trial. These motions have been fully briefed and are ripe for review.

## LEGAL STANDARDS

### I. Judgment of Acquittal

Federal Rule of Criminal Procedure 29(c) provides that "if the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). In ruling on a motion for judgment of acquittal made pursuant to Fed. R. Crim. P. 29, a district court must " 'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.' " *U.S. v. Smith*, 294 F.3d 473, 476 (3d Cir.2002) (quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir.2001)). While the evidence needs to be "substantial," *U.S. v. Eufrasio*, 935 F.2d 553, 577 (3d Cir. 1991), it "need not unequivocally point to the defendant's guilt as long as it permits the jury to find the defendant guilty beyond a reasonable doubt." *Eufrasio*, 935 F.2d at 577 (citing *U.S. v. Pungitore*, 910 F.2d 1084,1129 (3d Cir. 1990)).

The Third Circuit has advised trial courts to be vigilant in the context of Fed. R. Crim. P. 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury. *See United States v. Jannotti*, 673 F.2d 578, 581 (3d Cir.) (en banc); *see also* 2A Charles A. Wright, *Fed. Prac. & Pro.*

(Criminal 3d) § 467 at 311 (2000) ("A number of familiar rules circumscribe the court in determining whether the evidence is sufficient ... It is not for the court to assess the credibility of witnesses, weigh the evidence or draw inferences of fact from the evidence. These are functions of the jury."). Given the deference to the jury's decision this standard entails, the Third Circuit has recently elaborated: "[A]n insufficiency of the evidence claim places a heavy burden on the appellant because we will only find the evidence insufficient when the prosecution's failure is clear." *United States v. Mercado*, 610 F.3d 841, 845 (3d Cir. 2010) (citing *United States v. Soto*, 539 F.3d 191, 194 (3d Cir.2008)).

**II. New Trial**

Fed. R. Crim. P. 33 authorizes a district court to grant a new trial "if the interests of justice so require." "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir.2002). However, even if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial "only if it believes that there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted." *Id.* (citation and quotation marks omitted). Rule 33 motions are generally not favored and should be "granted sparingly and only in exceptional cases." *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir.1987) (citations omitted).

## DISCUSSION

### I. Defendant Nestor's Motion for a Judgment of Acquittal or a New Trial

#### A. Judgment of Acquittal

Defendant Nestor's renewed motion for judgment of acquittal will be denied because there was sufficient evidence to support the jury's verdict.

Defendant Nestor was found guilty of violating 18 U.S.C. § 1519. 18 U.S.C. § 1519 states:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

In order to convict defendant Nestor of violating 18 U.S.C. § 1519, the jury had to find proof of the following elements beyond a reasonable doubt: 1) defendant Nestor knowingly falsified a document; 2) the document related to a matter within the jurisdiction of a federal agency, and 3) the defendant falsified the document with the intent to impede, obstruct, or influence the investigation of the matter. While there was ample evidence at trial as to police training regarding federal jurisdiction over hate crimes, defendant Nestor contends that the evidence was insufficient to establish that he knowingly falsified any documents. However, at trial it was shown that defendant Nestor's July 20, 2008 report regarding the beating of Luis Ramirez omitted the names of a number of the suspected assailants in the beating and that defendant Nestor had been informed of the names of the assailants by Borough Manager Joseph Paulabinsky as well as, the jury could have inferred, defendants

Hayes or Moyer. The report also failed to mention that defendant Nestor had spoken on the phone with Tammie Piekarsky, the mother of one of the assailants, both on the night of the beating and three days later following the autopsy of Luis Ramirez. These omissions were material to the investigation and constitute significant evidence that defendant Nestor knowingly falsified the report. While defendant Nestor states that his testimony at trial provided explanations for these omissions and inconsistencies, the jury was free to accept or reject these explanations in reaching their verdict. It is not the role of the Court to second-guess them.

Additionally, defendant Nestor submitted an affidavit from juror Diane Berger in which she states the jury did not convict defendant Nestor of falsifying reports and found that the reports were accurate. Defendant Nestor argues that the affidavit supports his contention that the evidence was insufficient to support the jury's verdict. After the verdict was published in the newspapers, another juror, Barbara Barbacci, called the Court and stated that the jury had not found defendant Nestor guilty of falsifying records, but rather found him guilty of aiding and abetting.[1]

Under Federal Rule of Evidence 606(b):

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was

[1] Diane Berger first called a court deputy on January 28, 2010, the day after the verdict, and informed him that the jury did not find defendant Nestor guilty of filing false reports but rather found him guilty of conspiracy. She also called the Court later that same day. Barbara Barbacci also called the Court on the 28th. Counsel for both sides were informed of these calls the same day via a conference call with the Court.

> improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

Courts also take a restrictive approach to overturning a jury's verdict because of the sanctity afforded these verdicts by the Seventh Amendment. *See, e.g., Atl. & Gulf Stevedores v. Ellerman Lines*, 369 U.S. 355, 364 (1962). Policy considerations dictate a similar result. In *Domeracki v. Humble Oil & Ref. Co.*, the Third Circuit held:

> Neither a trial court nor an appellate court has the authority to inquire into the jury's decisional processes, even when information pertaining to the deliberations is volunteered by one of the jurors. . . [l]ong settled considerations of public policy dictate 'that mistake of the testimony, misapprehension of the law, error in computation, irregular or illegal methods of arriving at damages, unsound reasons or improper motives, misconduct during the trial or in the Jury Room, cannot be shown by the evidence of the jurors themselves, as the ground of disturbing the verdict, duly rendered' . . . [i]f evidence (obtained from jurors) could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation- to the destruction of all frankness and freedom of discussion and conference.'

443 F.2d 1245, 1247 (3d Cir. 1971) (internal citations omitted). Here, the inconclusiveness of Ms. Berger's affidavit and the call of Mrs. Barbacci make the point as to the considerations that dictate the foregoing pronouncement of the Third Circuit.

Moreover, at trial, following the reading of the verdict, the jury was polled and the verdict was affirmed individually by each juror. Finality of judgment is of paramount concern, and therefore, without any allegations of extraneous prejudicial information, outside influence, or scrivener's error, the Court will not delve into juror deliberations or begin second-guessing the decisions the jurors reached. This indeed would be a dangerous precedent. It would have the effect of rendering jury deliberations and verdict something with a potentially conditional component, and it would undercut the results of the

jury poll after the verdict.

### B. New Trial

Alternatively, defendant Nestor argues that he is entitled to a new trial on the grounds that the evidence was insufficient to support the jury's verdict. However, exercising the Court's own, independent judgment, there was sufficient evidence to sustain a guilty verdict as to count two of the indictment. Defendant Nestor's July 20, 2008 report discussed above contained numerous material omissions, including failing to mention that he had spoken with Tammy Piekarsky both the night of the beating and immediately following the autopsy of Luis Ramirez three days later. This evidence is sufficient to sustain the jury's verdict. Furthermore, a new trial will not be granted on account of possible juror confusion for the reasons stated above.

## II. Defendant Moyer's Motions for a Judgment of Acquittal or a New Trial

### A. Judgment of Acquittal

Defendant Moyer's Motion for Judgment of Acquittal will be denied.

18 U.S.C. 1001 states:

> (a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully–
>
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
>
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
>
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title, imprisoned not more than 5 years. . ..

Defendant Moyer was charged with making false statements to the FBI, specifically that Edward Ney had told Defendant Moyer the night of the beating that there had been a man with a gun and that Mr. Ney had not identified any of the assailants in the beating when he first spoke to Defendant Moyer at the baseball field. In order to convict the defendant on count five of the indictment, the jury had to find proof of the following elements beyond a reasonable doubt: 1) that Moyer made a statement or representation; 2) that the statement or representation was material; 3) that the statement or representation was false; 4) that the false statement was made knowingly and willfully; and 5) that the false statement was made in a matter within the jurisdiction of the Government of the United States. Defendant Moyer told the FBI on June 2, 2009, in the midst of their investigation into the Ramirez beating, that Mr. Ney told him there was a man with a gun and that Mr. Ney did not identify any of the assailants in the attack in Defendant Moyer's presence. However, as presented at trial, in his recorded 911 call placed immediately after the beating Mr. Ney can clearly be heard saying to defendants Hayes and Moyer, "they [the assailants] went that way," indicating to the officers the direction of the fleeing assailants. Further, although defendant Moyer testified that Mr. Ney did tell him there was a man with a gun, Mr. Ney denied this, and it is not the role of the Court to evaluate conflicting testimony in ruling on a Rule 29 motion. Therefore, defendant Moyer's motion for a judgment of acquittal will be denied.

**B. New Trial**

Defendant Moyer is not entitled to a new trial. As just discussed, there was evidence, including a recorded 911 phone call played at trial, that Mr. Ney identified the

assailants of Luis Ramirez to Defendant Moyer. Defendant Moyer told the FBI that he did not. Even under independent evaluation, this evidence is sufficient to sustain the jury's verdict.

**CONCLUSION**

For the reasons stated above, the motions for judgment of acquittal or a new trial of defendants Nestor and Moyer will be denied. An appropriate order follows.

5/25/11
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA

v.

MATTHEW NESTOR and WILLIAM MOYER,

Defendants,

CIVIL ACTION NO. 3:09-CR-397

(JUDGE CAPUTO)

**ORDER**

**NOW**, this 25th day of May, 2011, **IT IS HEREBY ORDERED** that Defendant

Nestor's Motion for Judgment of Acquittal or a New Trial (Doc. 301) is **DENIED**.

Defendant Moyer's Motion for Judgment of Acquittal or a New Trial (Doc. 303) is also

**DENIED**.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge